Jason HICKS, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–90–00443–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 1, 1991.

John Petruzzi, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., Carol M. Cameron, Cindy Hicks, Asst. Harris County Dist. Attys., for appellee.

Before COHEN, WILSON and PRICE,[1] JJ.

## OPINION

WILSON, Justice.

A jury found appellant guilty of unauthorized use of a motor vehicle, found two enhancement paragraphs true, and assessed punishment at 25 years confinement. We reverse for the State's failure to observe fundamental principles of appropriate jury argument.

Appellant raises no complaint as to evidence adduced against him at trial. A long narrative about the evidence is therefore unnecessary. Jorge Garcia testified he owned a 1982 white, four-door Buick LaSabre automobile. He arose one morning to find the car missing from his driveway where he had parked and locked it the night before. He did not give his permission to drive the car to anyone.

Houston police officer Salazar testified that at 4:00 a.m., he saw a large, white, four-door vehicle pull up in front of an apartment complex where several people were outside drinking beer. Two passengers entered the vehicle, and the car pulled away.

After watching the driver commit an alleged traffic violation, Salazar attempted to pull over the car. Instead of stopping, the driver engaged Salazar and another officer, Hutach, in a high speed chase. The driver eventually stopped the car and fled on foot. He was apprehended by Officer Hardeway. Salazar identified the suspect as the man he had been chasing, and placed him under arrest. In court, Salazar identified appellant as the man he had arrested.

In two points of error, appellant complains the trial court erred in overruling his objection and request for a mistrial based on the prosecutor's direct comments on his failure to testify.

---

1. The Honorable Frank C. Price, former Justice, Court of Appeals First District of Texas at Houston, participating by assignment.

■ The State initially asserts that, because appellant cited both federal and state constitutional proscriptions against self-incrimination, his first point of error is multifarious and presents nothing for review. In support of this contention, the State relies on a footnote in *Stoker v. State*, 788 S.W.2d 1, 18 n. 14 (Tex.Crim.App.1989), *cert. denied,* — U.S. —, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990), wherein the court stated, "Additionally, we note this is not a proper point of error and presents nothing for review." Stoker's point of error was that he was "denied a fair and impartial trial as guaranteed by the United States and the State of Texas Constitutions."

We do not find this authority persuasive for several reasons. First, Stoker's *point of error* made reference to both constitutional questions. Appellant's *point of error* does not state he was denied constitutional protections. Appellant states that contention clearly and distinctly in the *authorities and arguments* section contained under the point of error.

■ Second, the court in *Stoker* cited as authority for this premise, a footnote contained in *McCambridge v. State*, 712 S.W.2d 499 (Tex.Crim.App.1986), *aff'd after remand,* 778 S.W.2d 70 (Tex.Crim.App. 1989), *cert. denied,* — U.S. —, 110 S.Ct. 1936, 109 L.Ed.2d 299 (1990). In this footnote, the court admonished that, attorneys, "when briefing constitutional questions should carefully separate grounds and provide substantive analysis or argument on each separate ground. If sufficient distinction is not provided by counsel, this court *may* overrule the ground as multifarious." *McCambridge*, 712 S.W.2d at 500–501 n. 9 (emphasis added). Thus, the decision to overrule a ground of error is discretionary. Moreover, it is not suggested by the State that standards of review relative to the protections against self-incrimination afforded by both the federal and state constitutions are different in any relevant sense as applied to this case. There was no need to make two separate points of error. Finally, the Rules of Appellate Procedure allow us to construe briefing rules liberally, which we decide to do here preferring a

review of substance over form. TEX. R.APP.P. 74(d). The State's contention is overruled.

We turn now to a discussion of the merits of appellant's points of error. The Texas Code of Criminal Procedure specifically prohibits the State from making reference to a defendant's failure to testify. Article 38.08 of the code provides that "any defendant in a criminal action shall be permitted to testify in his own behalf therein, but the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause." TEX.CODE CRIM.P.ANN. art. 38.08 (Vernon 1979); *see Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965); U.S. CONST. amend. V; TEX. CONST. art. I, § 10.

■ During final argument, the following statements, objections, and rulings of the court were made:

PROSECUTOR: Now, the Defense attorney told you and the Judge told you in the charge that you cannot consider the fact that the Defendant did not get on the stand to testify. And that's true. You can't hold that against him, but that cuts both ways. That also means that you can't go back in the jury room and make up a story for him and say: Well, maybe this was what he was doing; maybe that's what he was doing. You can't make up a story for him. You decide the case based on the facts before you.

And the Defense attorney told you: Well, you know, we didn't put on a case today because we didn't feel like the State had proved their case, beyond a reasonable doubt. Well, Ladies and Gentlemen, that's not the only reason they could have decided not to put on a case. Maybe he didn't think you would believe his Defendant. *Maybe that's why he didn't put him up there.*

COUNSEL: Your Honor, excuse me. I would object to that statement. It's commenting on the Defendant's failure to testify.

THE COURT: That's overruled, Counsel. Stay in the record. Go ahead, Counsel. Argue your case, but move on to something else.

. . . .

PROSECUTOR: And what about his friend and what about this 20 to 30 minute conversation? If the Defense attorney thinks that conversation is so important and is an unanswered question, he has the same right to subpoena witnesses that the State has. He could have brought them before you today to tell you what was in that conversation, if that conversation would have exonerated that client.

COUNSEL: Your Honor, excuse me. I make the same objection. The State's argument is commenting on the Defendant's failure to testify. We object to that.

THE COURT: Ladies and Gentlemen of the Jury, you're not to consider the last statement or the earlier one made by the State's attorney for any purpose whatsoever. You are hereby ordered to completely disregard it, in regards to the Defendant. Go ahead, Counsel.

COUNSEL: Your Honor, the Defense would move for a mistrial.

THE COURT: Overruled, Counsel.

. . . .

PROSECUTOR: Now Ladies and Gentlemen, that night, this Defendant knew he was guilty. That night, he knew he was guilty of the crime of committing the offense of unauthorized use of a motor vehicle. He ran from the police in the car. He ran from the police on foot. He knew he was guilty that night. *Why doesn't he admit to his guilt today in court?* Because he doesn't want to take responsibility.

COUNSEL: Your Honor, again I object to the State's comment about the Defendant admitting his guilt in court. Again, it's commenting on the Defendant's failure to testify, Your Honor.

THE COURT: Ladies and Gentlemen of the Jury, the last statement made by the State's attorney, you are not to consider for any purpose whatsoever, and you are hereby ordered to completely disregard it, as previously stated by the Court on the other two matters.

Go ahead.

COUNSEL: I move for a mistrial again.

THE COURT: Overruled.

The State asserts the argument of its attorney set out above was simply a proper response to the argument made by appellant's counsel. *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex.Crim.App.1973). It claims the prosecutor did not call the jury's attention to appellant's failure to testify, but directed her remarks to appellant's counsel and not to appellant. The State further contends the statements were not manifestly intended to be or were of such a character that the jury would naturally and necessarily take them to be comments on appellant's failure to testify. *McKay v. State*, 707 S.W.2d 23, 37 (Tex.Crim.App. 1985), *cert. denied*, 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986).

We disagree. After reviewing the prosecutor's entire closing argument, we conclude the statements set out above were intended to be comments on appellant's failure to testify. As a result of the argument, the jury could not help but be directed to appellant's failure to answer directly the charges against him. The trial court erred in overruling appellant's objection to the first of the prosecutor's statements, and later in not granting a mistrial for the repeated comments of the prosecutor.

▆ Having determined a violation of article 38.08 occurred does not, however, automatically constitute reversible error. *Madden v. State*, 799 S.W.2d 683, 700 (Tex. Crim.App.1990), *cert. denied*, ── U.S. ──, 111 S.Ct. 902, 112 L.Ed.2d 1026 (1991). We must determine if such error was harmful. TEX.R.APP.P. 81(b)(2).[2] In determining

---

**2.** The appellate rules and a plethora of case authority would indicate a harm analysis is required. However, in the case of *Thompson v. State*, 651 S.W.2d 785 (Tex.Crim.App.1983), the court stated: "We find it unnecessary to discuss whether or not harm was caused by the prosecutor's remark since the appellant received the most extreme punishment permitted by law."

whether the error is reversible, we trace the impact, if any, of the prosecutor's comments on the jury. *Madden,* 799 S.W.2d at 700; *Harris v. State,* 790 S.W.2d 568, 587 (Tex.Crim.App.1989). Furthermore, we must also determine whether declaring the error harmless would encourage the State to repeat it with impunity. *Id.* at 587.

■ The State contends the error, if any, was not harmful because: (1) the trial court's repeated limiting instructions to the jury not to consider the prosecutor's remarks for any purpose, cured any error. *See Bell v. State,* 724 S.W.2d 780, 803 (Tex.Crim.App.1986), *cert. denied,* 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987); (2) there was overwhelming evidence of appellant's guilt; (3) the jury was repeatedly instructed appellant had the right not to testify; and (4) there is no evidence the jury based its verdict of guilt on the fact appellant did not testify.

■ 1. *Limiting Instructions Cured Any Error.* The Court of Criminal Appeals has repeatedly held that a direct reference to a defendant's failure to testify cannot be cured by a judicial admonition to disregard. *Bird v. State,* 527 S.W.2d 891, 894 (Tex.Crim.App.1975); *see also Montoya v. State,* 744 S.W.2d 15, 37 (Tex.Crim. App.1987), *cert. denied,* 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988); *Thompson v. State,* 651 S.W.2d 785, 787 (Tex. Crim.App.1983). This is particularly true when, as in this instance, the prosecutor's statement was such a direct and flagrant comment on appellant's failure to testify. This contention is overruled.

■ 2. *Overwhelming Evidence of Guilt.* The State claims appellant was not harmed by the prosecutor's comments because the testimony provided overwhelming evidence of his guilt. We are not permitted to use this type of analysis in determining whether error was harmful. In *Harris,* the court stated:

[A]n appellate court should not determine the harmfulness of an error simply by examining whether there exists overwhelming evidence to support the defendant's guilt. The impropriety of this standard is:

A court that makes a finding of harmless error under the overwhelming evidence test is not finding that the (error) did not in fact affect the verdict.

. . . .

The court's affirmance simply indicates its opinion that the untainted evidence is so overwhelming that if the jury had been compelled to rely on it alone, it would have convicted. In so holding, the court is not passing upon what the jury did; it is not determining the propriety of the evidence on which the jury relied. Because it is ruling instead upon what the jury would do if forced to rely on different evidence, it is substituting itself for the jury as factfinder.

*Harris,* 790 S.W.2d at 587, quoting Field, *Assessing the Harmfulness of Federal Constitutional Error—A Process in Need of a Rationale,* 125 U.Pa.L.Rev. 15, 35 (1976). The State's contention is overruled.

3. *Instructions About Appellant's Right Not to Testify.*

The State asserts the jury was instructed several times concerning appellant's right not to testify. These instructions were found in the court's charge, argument by appellant's counsel, and also in the prosecutor's argument. During closing arguments, appellant's counsel stated:

[The trial court's charge] goes on to say that you are not to comment, in any way, on the Defendant's election not to testify. That's a very important point. If you get back there and someday says: Well, we didn't hear from him, it's the duty of the rest of the jury to tell that person: Look, the Judge instructed us we cannot comment on that. We cannot refer to that. That is not evidence in this case. We can't even talk about it. So, don't

---

*Id.* at 787 n. 3. Thompson was convicted of aggravated assault and, after enhancement for two previous convictions, received a sentence of 20 years. Appellant here was convicted of un-

authorized use of a motor vehicle, also enhanced by two prior convictions and received a sentence of 25 years.

**304**

even discuss that when you are back there.

Relying on *Madden*, the State contends this statement by counsel was a sufficient instruction to the jury not to consider appellant's failure to testify. The facts of this case do not support such a contention. Madden was convicted of murder. The testimony at trial showed Madden had stolen the decedent's credit card and signed his own name to it when he used the card. During closing argument, the prosecutor told the jury the defense would ask why Madden would sign his name to the credit card, thus leaving a trail for the police to find him. The prosecutor continued, stating: "I don't know that; you don't know why. There's only one person here that knows why and there's only one person here that knows the answer to [this] question." *Madden*, 799 S.W.2d at 699. As predicted, defense counsel did focus on the curiosity of Madden's behavior. The court found that because counsel's statements directed the jury's attention to questions that only Madden could answer, counsel indirectly focused on Madden's failure to testify. *Id.* at 700. Based on the content of the jury arguments and the evidence presented at trial, the court concluded the prosecutor's comments did not contribute to the jury's guilty verdict.

That is not the situation here. After appellant's counsel made the statement set out above, he summed up the evidence presented during the trial. He specifically referred to inconsistencies in the police officer's testimony and problems with the State's proof concerning the element of ownership of the vehicle. In making these statements, counsel did not pose questions to the jury that could be resolved only by appellant. Thus, counsel's statements did not, as the State asserts, indirectly focus on appellant's failure to testify.

▮▮▮▮ It is important to note there is a difference between a prosecutor's comment on a defendant's failure to testify and defendant's counsel making a similar statement. If the State makes a comment on a defendant's failure to testify and presents the jury with a question only the defendant could have answered, reversible error has occurred. *Montoya v. State*, 744 S.W.2d 15, at 35; *Myers v. State*, 573 S.W.2d 19, 20–21 (Tex.Crim.App.1978). If defense counsel makes a similar statement, it is not reversible error. *Madden*, 799 S.W.2d at 701. Counsel's indirect reference to a defendant's failure to testify that does not present questions only the defendant could answer does not cure the State's improper comment.

This contention is also overruled.

4. *Verdict Not Based on Appellant's Failure to Testify.*

▮▮▮▮ The State next contends appellant was not harmed by the prosecutor's closing argument because there is no evidence the jury based its verdict on the fact appellant did not testify. We overrule this contention for two reasons. First, adoption of the State's contention would require us to apply an incorrect standard of review. Second, the State has not cited any applicable authority for this premise. The authority cited by the State, *Sneed v. State*, 670 S.W.2d 262 (Tex.Crim.App.1984) (op. on reh'g), did not even address the issue of prosecutorial comments, but dealt with improper jury discussion of the effect of parole.

We find the trial court committed reversible error in failing to sustain appellant's objections to the prosecutor's jury argument and in failing to grant a mistrial. We further find appellant was harmed by this error. We understand the prosecutor's desire to respond to what may have been a compelling argument by appellant's counsel. However, we cannot condone a jury argument that so flagrantly violated a defendant's right not to testify.

The judgment of the trial court is reversed and the case remanded for a new trial.

COHEN, Justice, concurring.

The prosecutor in this case violated a rule that has been characterized by the Court of Criminal Appeals as "hornbook law" that "no *reasonably competent* prosecutor" would violate. *Thompson v. State*,

651 S.W.2d 785, 786, n. 3 (Tex.Crim.App. 1983) (emphasis in original). Thus, I unhesitatingly join the decision that the prosecutor made a grossly improper argument, and the court erred by overruling appellant's objection.

It is more difficult to decide whether such error is automatically reversible, without regard to harm, or whether it may be harmless. Several cases have held that the prohibition against a direct comment on the defendant's failure to testify is mandatory and harm from such an argument is not generally cured by an instruction to the jury. *Montoya v. State,* 744 S.W.2d 15, 37 (Tex.Crim.App.1987) (op. on reh'g). *Montoya* is a good example of the law's confusion on this issue. The argument in *Montoya* was a direct reference to the defendant's failure to testify. *Id.* at 35. Although it stated the rule and cited authorities supporting it, the *Montoya* court conducted a lengthy, detailed discussion of facts that rendered the error harmless, applied a harmless error test, and unanimously held the error was harmless. *Id.* at 38–40. The court reached this conclusion even though it recognized the "tremendous" protection afforded a defendant who exercises his state and federal constitutional rights not to testify. *Id.* at 37. Thus, even a direct comment on a defendant's refusal to testify is, sometimes, subject to harmless error review.

My opinion is that a direct comment should be automatically reversible because it violates a mandatory statute that is "hornbook" law, which "no reasonably competent prosecutor" would violate, as stated in *Thompson.* Such a rule requires prosecutors to be competent and to act in good faith. However, if the law is that a prosecutor's bad faith or grossly incompetent violation of a mandatory statute can be harmless, I would hold that it was harmless here, if we look to the evidence *alone.* Appellant was caught in the act of driving a stolen car and fled at high speed in the car and then on foot. He was arrested while fleeing. This is overwhelming evidence of guilt, which, in my opinion, would have resulted in a guilty verdict even without the State's flagrantly illegal argument. "The presence of overwhelming evidence of guilt plays a determinative role in resolving the [harmless error] issue." *Harris v. State,* 790 S.W.2d 568, 587 (Tex.Crim.App. 1989). I doubt that this error kept jurors from properly applying the law to the facts. *Id.* at 588. On this record, the error was not likely to have disrupted the jury's orderly evaluation of the evidence. *Id.* But *Harris* also requires us to consider the source of the error, the nature of the error, whether it was emphasized by the State, and whether "declaring the error harmless would encourage the State to repeat it with impunity." *Id.* at 587. The prosecutor was the source of the error. The error was egregious because it violated a mandatory statute, something no reasonably competent prosecutor could have done in good faith. The error was emphasized at final argument because the prosecutor mentioned it three times, and the judge implicitly approved it the first time by overruling the objection. Finally, declaring the error harmless would encourage the State to repeat it.

As the *Harris* court declared, "any harmless error rule is basically one of judgment." *Id.* at 585. "The reviewing court must focus on the process and not on the result." *Id.* at 588. "[A]n appellate court should be concerned with the integrity of the process leading to the conviction." *Id.* at 587. Given the requirement that we focus on the process and not on the result, given the rule that harmful error is not automatically cured by overwhelming evidence, and given the danger that declaring this error harmless would encourage its repetition, I conclude that this error threatened not just the appellant, but also the integrity of the process leading to the conviction. *Harris* tells us that judges should use "judgment." Mine is that repeated prosecutorial misconduct of constitutional magnitude should not be condoned in this particular case, even though the evidence was overwhelming.